IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DWIGHT BOWLING                                                      MOVANT

v.                                                       No. 1:10CR137-GHD-DAS

UNITED STATES OF AMERICA                                         RESPONDENT

MEMORANDUM OPINION

This matter comes before the Court on the motion of Dwight Bowling to vacate, set aside, or correct his sentence [54] under 28 U.S.C. § 2255. Bowling alleges that his attorney rendered ineffective assistance of counsel by failing to perfect an appeal of his sentence prior to the expiration of the appeal deadline. The government has responded to the motion, and Bowling has replied. The parties have offered evidence and testimony in a hearing on the issues, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed without prejudice.

*A. Facts and Procedural Posture*

The facts and procedural posture of this case are inextricably enmeshed because the movant, Dwight Bowling, alleges that his trial counsel provided ineffective assistance by failing to abide by a procedural rule, namely, to file a timely notice of appeal. The facts of this case arise under complex circumstances. All of Bowling's legal troubles arose out of allegations of sexual misconduct with minor boys over a period of years. During the time leading up to his federal guilty pleas, sentencing, and, ultimately, incarceration, Bowling was defending multiple federal criminal charges, multiple state criminal charges, and multiple state civil suits. He was also going through a divorce. To say the least, he was embroiled in a multitude of lawsuits, criminal and civil. Counsel appointed by this court to defend Bowling against the federal criminal charges also represented him in his divorce, in the state

civil suits – and coordinated her efforts with those of counsel appointed to represent Bowling against the state criminal charges.

On September 22, 2010, a federal Grand Jury returned a 5-count indictment [9] against Dwight Bowling, charging him with 1 count of harassment of a witness under 18 U.S.C. § 1512(c)(2) and 4 counts of coercion or enticement of a minor under 18 U.S.C. § 2423(a). Dwight Bowling entered guilty pleas on April 27, 2011 [42], pleading guilty to one count of Obstruction of Justice under 18 U.S.C. § 1512(c)(2), and two counts of Transportation of a Minor in Interstate Commerce with Intent to Engage in Sexual Activity under 18 U.S.C. § 2423(a).

At the August 16, 2011, sentencing hearing, the Court[1] reviewed the Presentence Investigation Report and determined the United States Sentencing Guideline range to be from 135 months to 168 months. The Court then departed upward from the Guidelines and sentenced Bowling to a term of 300 months incarceration. [43]. Bowling and his attorney were surprised at the length of the sentence, and, immediately after sentencing, counsel told Bowling that she would seek an appeal on his behalf. After further discussion, Bowling became angry and entered into a heated exchange with trial counsel, during which he cursed and lunged at her. Law enforcement officers had to remove him and others from the room. The Court entered Judgment on August 22, 2011. [44]. As such, the deadline to file a Notice of Appeal with the Court became September 5, 2011, 14 days later. FED. R. APP. P. 4(b)(1)(A).

In separate criminal proceedings in state court, Bowling had pled guilty to 14 counts of various sex crimes involving at least 3 minors. These pleas were offered under *Alford v. North Carolina*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), and Bowling did not admit guilt.

---

[1] The United States District Judge presiding over this case from its initiation through sentencing was the late Honorable W. Allen Pepper, Jr. After his passing, the case was reassigned to the undersigned Judge on February 3, 2012.

Bowling's sentencing on these state criminal charges took place in Monroe County Circuit Court on August 30, 2011. Immediately prior to the state sentencing hearing, Bowling and his son, Russ, told state trial counsel (and federal counsel, who also attended the hearing) that Bowling wished to withdraw his guilty pleas and go to trial. Both attorneys advised him that the state court would never grant such a request, but he did not believe them. The situation again devolved into a shouting match, and Bowling again lunged at and cursed federal trial counsel. Trial counsel testified at the § 2255 hearing that during that exchange, both Bowling and Russ told her that they were going to hire private counsel, and Bowling told her that he did not want her to file another paper on his behalf. Bowling could not remember whether he said that or not, and his son Russ had no memory of the exchange, either. In addition, Russ was not present during the entire conversation. Neither Bowling nor his son could, therefore, affirmatively refute counsel's testimony. On the other hand, given the several heated exchanges among trial counsel, Bowling, and his son, counsel could be mistaken as to when the exchange occurred.

On the same day (August 30, 2011), Bowling's federal appointed counsel filed a Motion [45] to Appoint [Other] Counsel in the instant case. Judge Pepper denied the motion on October 18, 2011, after the September 5, 2011, deadline to seek an appeal had expired. [47]. On October 24, 2011 (63 days after the Court entered the Judgment, but only 6 days after the Court denied the motion to appoint other counsel), Bowling filed a Notice of Appeal. [48]. Although the Notice of Appeal had been filed after the 14-day deadline, the appeal nonetheless proceeded through briefing. On September 24, 2012, the government moved in the Fifth Circuit Court of Appeals to dismiss the appeal as untimely. The Fifth Circuit granted the motion and dismissed Bowling's appeal on October 24, 2012. Bowling's counsel then filed a Motion to Reinstate Appeal that same day. In paragraphs 15

and 16 of that motion, counsel averred, "Appellant [Bowling] at all times indicated his desire for an appeal," that she "was specifically instructed not to file *another document* on [Bowling's] behalf," and that she "attempted to protect his rights by requesting new counsel for [Bowling]." The Fifth Circuit denied the motion to reinstate Bowling's appeal on October 29, 2012. [5th Cir. Docket, 11-60751]. Bowling filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on September 26, 2013 [54], arguing that trial counsel was ineffective by failing to perfect his direct appeal in a timely manner.

## *B. Ineffective Assistance of Counsel*

"A claim of ineffective assistance of counsel for failing to timely file a notice of appeal is properly asserted in a § 2255 motion and the remedy is an out-of-time appeal." *United States v. Bernal*, 551 F. App'x 177, 179 (5th Cir. 2014) (per curiam) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 483–86, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007); *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001) ("Since the 1960s, our court, pursuant to a § 2255 motion, has permitted an out-of-time appeal when a defendant was denied assistance of counsel on appeal, through counsel's failure to perfect an appeal.")). The Court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove that defense counsel was ineffective, the movant must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. The Court must analyze counsel's actions based upon the circumstances existing at the time – and must not use the

crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The movant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052 (citation omitted). To prove prejudice, the movant must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 516 U.S. 1005, 116 S. Ct. 557, 133 L. Ed. 2d 458 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

## C. Discussion

In the instant § 2255 motion, Bowling claims that he told his appointed counsel to file a notice of appeal regarding the 300-month sentence, but that counsel failed to do so prior to expiration of the appeal deadline, causing Bowling to forfeit his right to a direct appeal. Counsel responds that, during the heated exchange prior to imposition of Bowling's state sentence on August 30, 2011, he told her not to file any other papers on his behalf. Counsel thus believed that Bowling had "fired" her – effectively releasing her from her duty to represent him and to preserve his right to appeal. Bowling counters that, though he *later* told counsel not to file any further papers on his behalf, that exchange took place months later – and involved only the state civil suits. Bowling contends that he always wanted to appeal, counsel knew it, and she nonetheless failed to seek an appeal on his behalf.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The United States Supreme Court has interpreted this provision as affording indigent defendants the right to court-appointed counsel. *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

The appointment of counsel to indigent defendants in federal criminal cases is governed by the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA"), which provides in pertinent part that "[r]epresentation shall be provided for any financially eligible person who . . . is entitled to appointment of counsel under the Sixth Amendment to the Constitution." 18 U.S.C. § 3006A(a)(1)(H). "[A]n indigent criminal defendant's right to counsel extends through the period for taking an appeal." *Brewer v. United States*, 375 F.2d 285, 286 (5th Cir. 1967) (citations omitted). "The duty to perfect an appeal on behalf of a convicted client [arises] when the client makes known to counsel his desire to appeal the conviction." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993).

The CJA provides that "[e]ach United States District Court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation . . . ." 18 U.S.C. § 3006A(a). The Judicial Council of the Fifth Circuit has placed into operation such a plan entitled "Plan for Representation on Appeal under the Criminal Justice Act" (hereinafter, the "Fifth Circuit CJA Plan"). The Fifth Circuit CJA Plan provides that "[a]ny financially eligible person is entitled to appellate representation by appointed counsel if the district court appointed counsel pursuant to 18 U.S.C. § 3006A(a)(1) or (2)." 5th Cir. CJA Plan § 3(a). The Fifth Circuit CJA Plan further provides that "counsel appointed under the [CJA] by the district court shall continue to provide representation on appeal unless relieved by court order"; indeed, appointed counsel may be relieved by this obligation "only by [a] written order" which appoints a substitute counsel or allows the party to proceed *pro se*. *Id.* § 5(B).[2]

Under the Fifth Circuit CJA Plan, appointed counsel must continue to represent her client on

---

[2] The CJA similarly provides: "During the course of a particular case the court may enter an order substituting one appointed counsel for another, as the interests of justice require." 18 U.S.C. § 3006A(c).

appeal unless ordered otherwise by the Court. "Counsel may be relieved [from the obligation to represent the party on appeal] upon a showing that there is a conflict of interest or other most pressing circumstances or that the interests of justice otherwise require relief of counsel." *See id.* § 5(B). Both the government and Bowling agree that Bowling, at all times after the imposition of his federal sentence, wished to prosecute a direct appeal of the sentence – and that his appointed counsel was aware of Bowling's desire to appeal. On the other hand, although it is clear that Bowling wanted to appeal his sentence, it appears that he did not want his *court-appointed counsel* to do so.

The government argues that Bowling's desire to prosecute his appeal (but with other counsel) and his instruction that current appointed counsel not file another paper on his behalf left counsel with a Hobson's choice: either (1) proceed against her client's wishes and file a paper (notice of appeal) for him, despite his protestations, thus fulfilling her duty to preserve his right to appeal, or (2) fulfill her client's wish that she file nothing else in the case, but, in doing so, forfeit his right to appeal. As discussed below, counsel knew that Bowling wished to appeal, no matter that he wished for other counsel to proceed with the appeal. Counsel tried a third path to preserve Bowling's right to appeal: to seek other counsel to represent him during an appeal.

In this case, counsel was mistaken. There was no Hobson's choice, as neither Bowling nor his counsel had the authority to determine when counsel's representation ended. That decision rests entirely with the Court. "Although an indigent defendant has a Sixth Amendment right to be represented by counsel in his criminal proceedings, he is not entitled to demand a different appointed counsel in the absence of showing good cause." *United States v. Contreras*, 558 F. App'x 400, 400 (5th Cir. 2014) (per curiam) (citing *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)). *See Montejo v. Louisiana*, 556 U.S. 778, 784, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) (citing *United*

*States v. Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006)).

Bowling could not "fire" his appointed counsel; nor could counsel simply wash her hands of the matter when she and Bowling had an enormous falling out – no matter how much enmity existed between them or whether he told her not to file any papers on his behalf. Though either could request that other counsel represent Bowling during his appeal, the final decision always rested with the Court. Evidence presented at the hearing, including an exchange of emails between Bowling and his counsel, revealed that the attorney-client relationship between Bowling and his counsel had become strained, indeed. This is not uncommon, especially, as in this case, when a criminal defendant has received a lengthy sentence. However, counsel conveyed none of this in her motion to substitute counsel (erroneously styled "Motion to Continue Trial") filed on August 30, 2011. In the motion, counsel offered the following reasons for the court to appoint new counsel: (1) Bowling is aggrieved by the judgment; (2) Bowling is indigent; (3) Bowling has indicated a desire for new CJA counsel for appeal purposes; (4) appointed counsel agrees with the assessment; (5) counsel believes that justice would be served by appointment of other counsel; and (5) Bowling's interests would be best protected by a "new set of eyes" on the case. Nowhere does counsel mention the heated exchanges leading nearly to fisticuffs, the substantial breakdown of communication, or any actual or constructive conflict in support of the motion for new counsel.

Certainly with her many years of service on the CJA panel, counsel should have known of the necessity for the Court to issue an order to relieve her of her obligation to represent her client. Indeed, in the prayer for relief of the motion to substitute counsel, Bowling's counsel states: "Defendant Dwight Bowling moves this Honorable Court *to allow Christi McCoy to be discharged of further duties* and to appoint Counsel so that he may perfect an appeal from the judgment of this Honorable

Court entered August 22, 2011." (emphasis added). Thus, counsel acknowledged prior to the expiration of the appeal deadline that she had a duty to continue to represent Bowling until the Court relieved her of her obligation. Ideally, Judge Pepper would have ruled on the motion to substitute counsel prior to the expiration of the appeal deadline, thus making counsel's path clearer. In addition, in her testimony at the § 2255 hearing, counsel stated that "at all times [Bowling] indicated his desire for an appeal following his sentencing." Thus, counsel knew – at the time when it mattered – that Bowling wished to appeal his sentence. Further, in the absence of a ruling by the Court relieving her of her duty to defend her client, counsel retained the duty to do so and preserve her client's right to appeal. Also, counsel conceded at the § 2255 hearing that the motion to appoint other counsel was not a viable means to preserve Bowling's right to appeal. Counsel misunderstood her role in this situation, and it cost Bowling his right to appeal.

The loss of Bowling's right to appeal also seems to have arisen out of various miscommunications between him and his counsel – due largely to the large number and variety of cases in which she represented him at the time. The proof established that Bowling told counsel not to file another paper on his behalf – but he and counsel had different ideas regarding what that meant. Russ Bowling (the movant's son) testified that he and his father meant for counsel to stop filing papers *only in the state court civil matters*. At the § 2255 hearing, Dwight Bowling had a very hard time remembering what he had said regarding counsel's representation – and when he said it. However, he maintained that he always wanted to prosecute an appeal of the sentence in the instant case. Counsel stated that she believed that the instruction not to file any more papers was meant for both the state civil and federal criminal cases.[3] When reviewing the exchange of emails put into evidence, the Court

---

[3] This must have been prior to imposition of the federal sentence, given counsel's testimony and statements and

often found it difficult to determine which cases the parties were referencing. It is easy to see how the sheer number of cases – with overlapping issues – could blur the lines of communication and lead to the present situation.

In this case, the Court concludes that appointed counsel had the duty to file a notice of appeal on behalf of Dwight Bowling prior to the expiration of the appeal deadline, but failed to do so. This is not a case of incompetence or wilful neglect of a client's interests. Christi McCoy has ably and zealously represented her clients – indigent and otherwise – before this Court for some twenty years. In this case, however, a misunderstanding of the law – coupled with several miscommunications between attorney and client – led to the loss of Dwight Bowling's right to appeal.

### D. Conclusion

In sum, this peculiar set of events constitutes ineffective assistance of counsel. "Granting an out-of-time appeal is a permissible remedy if counsel has failed in his duty to perfect a requested appeal." *United States v. Cooley*, 549 F. App'x 307, 307 (5th Cir. 2013) (per curiam) (citing *West*, 240 F.3d 456, 459 (5th Cir. 2001)). "Under this judicial remedy, the district court must dismiss without prejudice a petitioner's § 2255 claim of ineffective assistance of appellate counsel and reinstate the judgment of conviction, which will restart the time for appeal under Federal Rule of Appellate Procedure 4(b)(1)(A)." *Id.* (citing *West*, 240 F.3d at 459–60). Accordingly, in the case *sub judice*, this Court dismisses without prejudice Dwight Bowling's § 2255 claim of ineffective assistance of counsel, reinstates the criminal judgment on the docket, and grants an out-of-time appeal. *See id.*

A final judgment consistent with this memorandum opinion will issue today.

---

motions that, at all times after federal sentencing, Bowling wished to appeal his sentence.

**SO ORDERED**, this, the 16th day of July, 2014.

                                                                      */s/ Glen H. Davidson*
                                                                        SENIOR JUDGE